IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PARK RESTORATION, LLC, )
    Appellant )
) C.A.No. 1:18-CV-310
vs. )
)
TRUSTEES OF CONNEAUT LAKE )
PARK, INC., )
    Appellee )

MEMORANDUM OPINION

U.S. D.J. Susan Paradise Baxter

I.     **Relevant Factual and Procedural History**

On August 1, 2013, a fire destroyed the Beach Club, a historical property owned by the Trustees of Conneaut Lake Park, Inc. ("Trustees") and managed by Park Restoration, LLC. As a result of the fire, Park Restoration, the Trustees, and four Taxing Authorities asserted competing claims to $611,000 in insurance proceeds.

In accordance with state law, the insurer required its insured, Park Restoration, to obtain a certificate from the local municipal treasurer stating whether back taxes were owed on the property.[1] Park Restoration received a certificate showing the Trustees owed $478,260.75 in delinquent property taxes.[2] These delinquent taxes dated to 1996, well before Park Restoration signed its management agreement with the Trustees in 2008, and the delinquent taxes were owed

---

[1] Pennsylvania law prohibits insurance companies from paying fire insurance proceeds to a "named insured" unless the local municipality certifies that no delinquent taxes are owed on the property where the insured structure was located. 40 Pa. Stat. § 638.

[2] Taxes were owed to Summit Township, Crawford County, the Tax Claim Bureau of Crawford County, and Conneaut School District (collectively, "Taxing Authorities").

1

on the entire 55.33-acre parcel on Conneaut Lake, not just the single acre that included the Beach Club.

Because of the tax delinquency, the insurer notified Park Restoration that it would transfer $478,260.75 of the $611,000 insurance proceeds to the Taxing Authorities. Park Restoration filed a declaratory judgment action in the Court of Common Pleas of Crawford County and the insurer interpleaded the $611,000 with the state court. The Trustees filed for bankruptcy and the declaratory judgment action was transferred to the United States Bankruptcy Court for the Western District of Pennsylvania.

In the Bankruptcy Court, Park Restoration argued that 40 Pa. Stat. 638 "applies solely to those situations where the fee owner of the property is insured and where the tax liabilities at issue are the financial responsibility of the owner as well." *In re Trustees of Conneaut Lake Park, Inc.*, 543 F.R.D. 193, 198 (Bankr. W.D. Pa. 2015). The Trustees responded that Park Restoration was not entitled to any of the insurance proceeds because Park Restoration insured the Trustees' property and they sought the remaining insurance proceeds after the Taxing Authorities were compensated.

The Bankruptcy Court granted partial summary judgment for the Taxing Authorities and Park Restoration holding that under § 638 the Taxing Authorities had a right to full payment of the delinquent taxes ($478,260.75), and that Park Restoration, as the named insured, was entitled to the balance of the insurance proceeds.

Park Restoration and the Trustees filed cross-appeals to the United States District Court for the Western District of Pennsylvania. Park Restoration argued, for the first time, that because the insured property constituted only 9% of the tax value of the 55.33-acre parcel, Park Restoration's insurance proceeds should apply pro rata to the tax debt. It also argued that

2

anything more would be an unconstitutional taking under both the Pennsylvania and U.S. Constitutions. Meanwhile, the Trustees claimed entitlement to the balance of the insurance proceeds because they owned the Beach Club. The District Court affirmed the Bankruptcy Court's summary judgment for Park Restoration as against the Trustees, but reversed the Bankruptcy Court's summary judgment for the Taxing Authorities as against Park Restoration. *In re Trustees of Conneaut Lake Park, Inc.*, 551 B.R. 577, 584-85 (W.D. Pa. 2016).

The Taxing Authorities appealed the District Court's judgment to the Third Circuit which reversed the District Court holding that "without a legally cognizable property interest [in the insurance proceeds], Park Restoration [had] no cognizable takings claim." *In re Trustees of Conneaut Lake Park, Inc.*, 855 F.3d 519, 526 (3d Cir. 2017).[3]

The Bankruptcy Court confirmed the Trustees' plan of reorganization.[4] ECF No. 7, Appendix at page 0262. The plan provided that the Taxing Authorities' claim was to be paid in full, using in part, the insurance proceeds.[5]

Then, Park Restoration initiated this adversary proceeding in the Bankruptcy Court arguing that because $478,260.75 of the insurance proceeds was paid to the Taxing Authorities on account of the Secured Tax Claims, Park Restoration may now step into the shoes of the Taxing Authorities and seek payment from the Trustees through 11 U.S.C. § 509. In response to

---

[3] The Third Circuit commented that "we emphasize that nothing in this opinion should be construed to preclude Park Restoration from seeking an accounting or other equitable relief in the future." 855 F.3d at 525. Park Restoration cannot rely on this snippet as creating a presumption that it should be permitted to seek relief here. The Third Circuit's statement is dicta and does not create a presumption that Park Restoration may obtain relief on a subrogation claim under § 509.

[4] Park Restoration did not participate in the bankruptcy case and did not file a proof of claim against the Trustees.

[5] On June 23, 2017, the $478,260.75 was paid from the Registry of the Bankruptcy Court to the Taxing Authorities.

3

the subrogation claim, the Trustees moved to dismiss arguing, *inter alia*, that Park Restoration failed to state a claim because it did not meet the technical requirements of § 509. After a detailed analysis, the Bankruptcy Court dismissed the complaint holding that Park Restoration failed to state a claim for subrogation as contemplated by § 509.[6] ECF No. 7, Appendix at pages 0064-0089.

Pending here is Park Restoration's appeal from the September 29, 2018 Bankruptcy Court order dismissing the amended complaint at Adversary Proceeding No. 18-1024 with prejudice. The parties agree that the issue here is whether the Bankruptcy Court erred in finding that Park Restoration failed to state a claim for subrogation under the Bankruptcy Code.

## II.     Standard of Review

This Court has jurisdiction over the appeal under 28 U.S.C. § 158 and the Bankruptcy Rules 8001, *et seq*.

When a district court reviews a decision of a bankruptcy court, it reviews the findings of fact for clear error and it reviews legal conclusions de novo. *Official Comm. of Unsecured Creditors of J. Allan Steel Co. v. Nucor-Yamato Steel Co. (In re J. Allan Steel Co.)*, 336 B.R. 226, 228-29 (W.D. Pa. 2005) *citing In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989). Mixed questions of fact and law must be broken down and reviewed under the applicable standard. *First Jersey Nat'l Bank v. Brown*, 951 F.2d 564, 567 (3d Cir. 1991). In sum, the court should "apply a clearly erroneous standard to integral facts, but exercise plenary review of the

---

[6] The Trustees also argued that the subrogation claim was discharged by the Trustee's confirmed Chapter 11 plan and that litigation of the subrogation claim was barred by the doctrines of res judicata and collateral estoppel. Because the Bankruptcy Court dismissed the action based on Park Restoration's failure to state a claim, it did not analyze the Trustee's other two arguments.

4

court's interpretation and application of those facts to legal precepts." *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011).

### III.  Analysis

While there is a long history of litigation between these parties, the issue here is a limited one: whether the Bankruptcy Court erred in finding that Park Restoration failed to state a claim for subrogation under § 509 of the Bankruptcy Code.[7] This Court reviews that legal decision de novo. *In re Sharon Steel*, 871 F.2d at 1222.

Despite the parties' lengthy filings reflecting the long-running dispute between them, this Court views the present controversy solely as a matter of statutory interpretation of the Bankruptcy Code and its application to the situation before us. The review is thus well-settled and straightforward.

Statutory interpretation "begins with the plain language of the statute." *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1498 (3d Cir. 1996) (citation omitted). "When a statute's language is plain, the sole function of the courts, at least where the disposition by the text is not absurd, is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7 (2000). The Supreme Court has repeatedly stated that "[t]he United States Congress says in a statute what it means and means in a statute what it says there." *Id.* at 6. When "the Court's interpretation of the statute's purpose is based upon the plain meaning of the text …, it is appropriate to identify, if possible, a congressional purpose consistent with the court's interpretation of the text at issue." *In re Home*

---

[7] There are three types of subrogation: (1) conventional or contractual, (2) legal or equitable, or (3) statutory. *Hamada v. Far E. Nat'l Bank (In re Hamada)*, 291 F.3d 645, 649 (9th Cir. 2002). The subrogation sought by Park Restoration is of the statutory variety.

5

*Mortgage, Inc.*, 379 B.R. 503, 515 (D. Del. 2008) *citing Lamie v. U.S. Trustee*, 540 U.S. 526, 539 (2004).

Title 11 U.S.C. § 509(a) provides: "an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." *Id.*

The legislative history of § 509 denotes:

> Section 509 deals with codebtors generally… This section is based on the notion that the only rights available to a surety, guarantor, or comaker are contribution, reimbursement, and subrogation. The right that applies in a particular situation will depend on the agreement between the debtor and the codebtor, and on whether and how the payment was made by the codebtor to the creditor. The claim of a surety or codebtor for contribution or reimbursement is discharged even if the claim is never filed, as is any claim for subrogation even if the surety or codebtor chooses to file a claim for contribution or reimbursement instead. Section (A) subrogates the codebtor (whether as a codebtor, surety, or guarantor) to the rights of the creditor, to the extent of any payment made by the codebtor to the creditor.

H.R. Rep. No. 95-595, 95th Congr., 1st Sess, (1977), p. 358, U.S. Code Cong. & Admin. News at 5963, 6314. *See also In re Hamada*, 291 F.3d at 650 (the legislative history of § 509 "indicates that it was designed to describe rights available to a limited class of creditors, namely, true co-debtors who have actually paid a debtor's obligation to the third party in question…").

Park Restoration is not a codebtor as it is not a surety, guarantor, or comaker of the Trustees' tax obligations:

(1) A surety is "someone who is primarily liable for paying another's debt or performing another's obligation…" BLACK'S LAW DICTIONARY (11th ed.2019).

(2) A guarantor is "someone who makes a guaranty or gives security for a debt. While a surety's liability begins with that of the principal, a guarantor's liability does not begin until the principal debtor is in default." *Id.*

6

(3) A co-maker is defined as "someone who participates jointly in borrowing money on a promissory note; esp., one who acts as surety under a note if the maker defaults." *Id*. Importantly, all three terms refer to an entity who **affirmatively** makes itself liable for the financial obligations of another. *CCF, Inc. v. First Nat'l Bank & Trust Co. of Okmulgee (In re Slamans)*, 69 F.3d 468, 473 (10th Cir. 1995) (in § 509, "[t]he word 'liable' means bound or obligated in law or equity. The word 'with' means in addition to. […] 'Liable with' means the parties are liable to the same creditor at the same time on the same debt.").

The record here does not reflect that Park Restoration affirmatively undertook the tax liabilities of the Trustees at any point. Indeed, the crux of the long-running dispute between the parties is that there was no agreement between the Trustees (the debtor) and Park Restoration (who now argues for status as a co-debtor) as to whether and under what circumstances Park Restoration would pay any portion of the long-delinquent taxes on the entire parcel of property. The record also does not reflect that Park Restoration paid the debt to the Taxing Authorities. The Taxing Authorities were paid by the insurer through the Bankruptcy Court. *See Stambaugh v. PNC Bank, N.A., (In re Stambaugh)*, 532 B.R. 572, 575 (Bankr. E.D. Pa. 2015) *quoting In re Hamada*, 291 F.3d 645, 650 (9th Cir. 2002) ("I view § 509 as generally providing a right of subrogation to a co-debtor who satisfies the bankruptcy debtor's obligation by paying the creditor. The payor/co-debtor is then subrogated to the rights of the creditor to the extent of the payment. It has been noted that, "the legislative history to § 509 indicates that it was designed to describe rights available to a limited class of creditors, namely, true co-debtors who have actually paid a debtor's obligation to the third party in question.'").

Park Restoration argues that by operation of § 638, it has become a payor/co-debtor. But while the operation of state law may have created a financial benefit to the Trustees, such a result

7

does not and cannot alter the plain meaning of the text of the Bankruptcy Code especially when viewed with its legislative history. *See Baines v. City of Chicago*, 584 B.R. 723, 726 (N.D. Ill. Mar. 22, 2018) ("Under basic preemption principles, any attempt to alter the balance Congress has struck between the relative rights of debtors and creditors in bankruptcy proceedings would interfere with the nation's bankruptcy laws and frustrate their full effectiveness, and thus would be improper."). *See also Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("When the words of a statute are unambiguous, then, this first cannon is also the last: the judicial inquiry is complete.").

**IV.    Conclusion**

For the reasons set forth above, this Court finds after de novo review that the legal holdings of the Bankruptcy Court are not erroneous. The Judgment Order dated September 29, 2018 will be affirmed.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PARK RESTORATION, LLC,
    Appellant

vs.

TRUSTEES OF CONNEAUT LAKE
PARK, INC.,
    Appellee

C.A.No. 1:18-CV-310

**O R D E R**

AND NOW, this 24th day of September, 2019;

Upon consideration of the notice of appeal and the submissions of the parties, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Order of the Bankruptcy Court dated September 29, 2018 is hereby AFFIRMED.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge

1